IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| YOUNAS SAYED MOHAMMED NADURATH, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | No. CIV-26-487-JD |
| MARKWAYNE MULLIN, Secretary of the U.S. Department of Homeland Security et al., | ) ) ) ) ) ) | |
| Respondents.[1] | ) | |

## REPORT AND RECOMMENDATION

Petitioner Younas Sayed Mohammed Nadurath, a noncitizen[2], seeks a

writ of habeas corpus under 28 U.S.C. § 2241. Doc. 1.[3] United States District

Judge Jodi W. Dishman referred the matter to the undersigned Magistrate

---

[1]    Pursuant to Fed. R. Civ. P. 25(d), Department of Homeland Security (DHS) Secretary Markwayne Mullin is substituted for former Secretary Noem as a party. Todd Blanche is the acting Attorney General and is substituted for former Attorney General Pam Bondi as a party. Respondent Fred Figueroa is not a federal official, and the response is not filed on his behalf. *See* Doc. 9, at 1 n.3.

[2]    This Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

[3]    Citations to a court document are to its electronic case filing designation and pagination. Except for capitalization, quotations are verbatim unless otherwise indicated.

1

Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C). Doc. 3. Respondents filed a response, Doc. 9, and the time for Petitioner to reply has lapsed. *See* Doc. 6. For the reasons set forth below, the undersigned recommends the Court grant habeas corpus relief and order Petitioner's immediate release.

## I.   Factual background and Petitioner's claims.

Petitioner is a citizen of Afghanistan who has lived in the United States since 1984 after entering as a Lawful Permanent Resident. Doc. 1, at 6; Doc. 9, at 2 (citing Ex. 1, at 1 & Ex. 2, at 3). Immigration and Customs Enforcement (ICE) took him into custody in June 2005 after he completed a sentence in federal custody. Doc. 9, at 2 (citing Ex. 1, at 2).[4] DHS charged him as removable under INA § 237(a)(2)(A)(ii) and (iii) because "he was convicted of two crimes of moral turpitude not arising out of a single scheme of criminal misconduct" and "an aggravated felony" after admission. *Id.*[5]

On August 2, 2005, an Immigration Judge (IJ) ordered Petitioner

---

[4]   Petitioner was convicted in the United States District Court for the Northern District of Texas for the offense of Using the Mail to Threaten to Injure Persons and Damage a Building by Means of Fire and Explosives, in violation of 18 U.S.C. § 844(e), an aggravated felony as defined in the Immigration and Nationality Act (INA). Doc. 9, at 2 (citing Ex. 1, at 2 & Ex. 2, at 3).

[5]   Petitioner was also convicted in Texas state court "for the offense of Robbery by Threats." Doc. 9, at 2 (citing Ex. 1, at 2 & Ex. 2, at 3).

removed to Afghanistan. *Id.* (citing Ex. 1, at 3 & Ex. 3). On August 23, 2005, DHS received a Request for Additional Evidence from the Consulate General of the Islamic Republic of Afghanistan with a response due by September 30, 2005. Doc. 9, Ex. 1, at 3. On October 2, 2005, the Consulate General denied Petitioner's travel document request because he failed to respond by September 30, 2005. *Id.*

The Swiss, British, and German consulates also denied Petitioner's resident requests. *Id.* DHS released Petitioner on an Order of Supervision (OOS) in December 2005, requiring him "to report in person every month to the designated ICE entity." Doc. 9, at 2 (citing Ex. 1, at 3 & Ex. 4 (December 27, 2005 OOS)).[6] Petitioner received a second OOS in November 2011 after Texas state law enforcement "officials informed ICE that Petitioner was in their custody." *Id.* at 2-3 (citing Ex. 1, at 4 & Ex. 5 (November 11, 2011 OOS)).

DHS sent another travel document request for Petitioner to the Consulate General of the Islamic Republic of Afghanistan in August 2017 and followed up a month later. Doc. 9, Ex. 1, at 4. No response was received. *Id.* "On October 9, 2019, assistance from Supervisory Detention and Deportation Officer . . . was requested in contacting Headquarters for Travel Document

---

[6]     The December 27, 2005 OOS was initially revoked, and the revocation subsequently rescinded after "a miscommunication" about one of Petitioner's monthly check-in appointments with ICE. Doc. 9, Ex. 1, at 3.

Status." *Id.* To date, "[t]here is no response from the Consulate General of the Islamic Republic of Afghanistan in [Petitioner's] file." *Id.*

ICE Enforcement Removal Operations (ERO) arrested Petitioner on December 13, 2025. Doc. 1, at 7; Doc. 9, at 3 (citing Ex. 1, at 4 & Ex. 6 (Warrant of Removal)). Petitioner alleges his detention violates his procedural due process rights, and the immigration statutes and regulations. Doc. 1, at 12-14. He raises the following grounds for relief:

(1)    By detaining him without providing the procedural safeguards required before revoking his OOS, Respondents deprived him of liberty without due process in violation of the Fifth Amendment (Violation of Procedural Due Process under the Fifth Amendment);

(2)    Violation of Federal Regulations Governing Revocation of Supervision; and

(3)    Unlawful Post-Removal-Order Detention under 8 U.S.C. § 1231(a).

*Id.* at 12-14. He asks this Court to declare that his "continued detention violates the Constitution and laws of the United States," issue a writ ordering Respondents to immediately release him, order that he be released under appropriate conditions of supervision, or in the alternative, order Respondents to abide by the procedures outlined in 8 C.F.R. § 241.13 for revoking an existing OOS. *Id.* at 15-16.

## II.    Standard of review.

An application for a writ of habeas corpus "is an attack by a person in

custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Habeas corpus relief is warranted only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

## III.   Analysis.

### A.   Statutory and regulatory framework.

Petitioner argues Respondents violated his Fifth Amendment procedural due process rights when they revoked his OOS and re-detained him without adequate notice, a prompt interview, and an opportunity to respond to the reasons for the revocation. Doc. 1, at 8-9 (citing 8 C.F.R. § 241.13(i)). He maintains that he abided by all conditions of release in his OOS for twenty years. *Id.* at 8.

Petitioner's allegations require the Court to consider the regulations Respondents are obligated to follow in revoking his OOS. *See Saqib v. Andrews*, 2026 WL 350830, at *2 (E.D. Cal. Feb. 9, 2026) ("Because these claims require examination of whether the government followed its own regulations that set out procedures in revoking release, procedures that protect important due process rights, the Court discusses these claims together."), *adopted*, 2026 WL 440566 (E.D. Cal. Feb. 17, 2026); *see e.g., Kong v. United States*, 62 F.4th 608, 620 (1st Cir. 2023) ("The plain language of the regulation,

however, does not allow a court in the first instance to make the required individualized finding. To the extent ICE claims that it made such a determination, the court should review that claim in light of the regulations instructing ICE on how it should make such a determination.").

Agencies must follow their own regulations. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265-68 (1954); *Webster v. Doe*, 486 U.S. 592, 602 n.7 (1988)). When a noncitizen has been detained pursuant to a final order of removal, ICE is required to release the noncitizen on an OOS if ICE determines there is no significant likelihood of the noncitizen's removal in the reasonably foreseeable future. *See* 8 C.F.R. § 241.13(g)-(h); *see also Zadvydas v. Davis*, 533 U.S. 678, 699-700 (2001) ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute.").

"8 C.F.R. § 241.4 . . . and 8 C.F.R. § 241.13 . . . set the terms of supervised release under Sections 1231(a)(3) and 1231(a)(6), including the conditions and procedures under which ICE may revoke release." *T. Nguyen v. Noem,* 2026 WL 790881, at *5 (C.D. Cal. Mar. 16, 2026). "First, ICE may revoke release when a noncitizen violates a condition of their [OOS]." *Id.* (citing §§ 241.4(l)(1), 241.13(i)(1)). "Second, ICE may revoke release when, 'on account of changed circumstances, [ICE] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future.'" *Id.* (citing

6

§ 241.13(i)(2)). "Third, certain officials may exercise their discretion to revoke the release." *Id.* (citing § 241.4(l)(2)).

The decision to revoke an OOS on account of changed circumstances must be based on an individualized determination that those changed circumstances render removal significantly likely in the reasonably foreseeable future. *See Kong, 62* F.4th at 619-20 (citing 8 C.F.R. § 241.13(i)(2)). ICE should make this determination based on the following factors:

> [T]he history of the [noncitizen's] efforts to comply with the order of removal, the history of [ICE's] efforts to remove [noncitizens] to the country in question or to third countries, including the ongoing nature of [ICE's] efforts to remove this [noncitizen] and the [noncitizen's] assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of [noncitizens] to the country or countries in question.

8 C.F.R. § 241.13(f). The regulations place the burden to establish changed circumstances on ICE. *See Saqib,* 2026 WL 350830, at *3 ("The regulations at [] § 241.13(i) . . . . indicate that when ICE revokes release to effectuate removal, 'it is [ICE's] burden to show a significant likelihood that the alien may be removed.'" (quoting *Escalante v. Noem,* 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025))).

If ICE elects to revoke an OOS, the noncitizen must "be notified of the reasons for revocation of his or her release," and ICE must "conduct an initial informal interview promptly after [the noncitizen's] return to [ICE] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation

7

stated in the notification." *See* 8 C.F.R. § 241.13(i)(3); 8 C.FR. 241.4(l)(1) ("Upon revocation, the [noncitizen] will be notified of the reasons for revocation of his or her release or parole."). The "reasons for revocation" that ICE must provide when revoking a noncitizen's OOS cannot be mere conclusory assertions about changed circumstances but must contain specific facts supporting ICE's decision to revoke the OOS.[7] And at the interview, the noncitizen "may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(3). ICE must then consider the contested facts and determine whether revocation of release was warranted. *Id.*

> **B.     ICE violated Petitioner's procedural due process rights by revoking his OOS without following its own regulations requiring it to give him adequate notice and the opportunity to respond.**

Respondents do not specify why Petitioner's OOS was originally issued, but it is reasonable to infer there was no significant likelihood of his removal in the reasonably foreseeable future when he was released in 2005, given that three countries denied him residency and his country of origin, Afghanistan, did not respond to a travel document request. *See Pham v. Bondi,* No. CIV-25-

---

[7]     "Courts across the country have repeatedly held that . . . boiler plate language is simply insufficient to give notice under § 241.13." *Ahmed v. Olson*, 2026 WL 836123, at *4 (E.D. Ky. Mar. 26, 2026) (collecting cases).

1157-SLP, 2025 WL 3477023, at *3 (W.D. Okla. Oct. 30, 2025) (noting "it is reasonable to infer that ICE must have made a determination that there was no significant likelihood of removal in the reasonably foreseeable future before issuing the [petitioner's OOS]") (internal citations and quotation marks omitted), *adopted,* 2025 WL 3243870 (W.D. Okla. Nov. 20, 2025).

Respondents maintain that because "Petitioner has failed to establish that his [OOS] was issued pursuant to § 241.13, which . . . require[s] some type of notice," his "failure is determinative because unlike Section 241.4(*l*)(1) or 8 C.F.R. § 241.13(i)(3), Section 241.4(*l*)(2) has no requirement that Petitioner receive an interview after his return to custody." Doc. 9, at 7.

Even if the Court were to find that Petitioner's OOS was issued pursuant to § 241.4(l)(2)[8], it hardly changes the analysis. "'[T]he release and revocation

---

[8]    Respondents argues that Petitioner was released under 8 C.F.R. § 241.4, without pointing to any evidence that it determined Petitioner's removal was likely in the reasonably foreseeable future when it re-detained him. Section 241.4(b)(4) provides "that, after supervised release under section 241.13, 'if the Service subsequently determines, because of a change of circumstances, that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future . . . the [noncitizen] shall again be subject to the custody review procedures under [8 C.F.R. § 241.4]." *Escalante,* 2025 WL 2206113 at *3. "In short, Section 241.13 applies to cases where a petitioner is in revocation proceedings, whereas Section 241.4 applies to routine custody reviews for aliens detained after the 90-day removal period." *Tran v. Bowen,* 2026 WL 790760, at *2 n.3 (C.D. Cal. Feb. 5, 2026). Additionally, "revocation of release under § 241.4(l)(2) must be made either by the Executive Associate Commissioner or, under certain circumstances, a district director." *Navarro v. Bondi,* 2026 WL 468582, at *2 (D. Colo. Feb. 18, 2026). Respondents have not presented anything to the Court to suggest the decision to revoke Petitioner's

of release of noncitizens subject to a final order of removal' is governed by 8 C.F.R. §§ 241.4 and 241.13." *Kumar v. Mullin,* 2026 WL 1139601, at *2 (D. Colo. Apr. 24, 2026) (quoting *Virachak v. Baltazar,* 2026 WL 746285, at *2 (D. Colo. Mar. 17, 2026)). "The regulations differ inasmuch as § 241.13 sets out additional special review procedures' applicable to noncitizens who are subject to a final order of removal and are detained under the custody review procedures provided at § 241.4 after the expiration of the removal period when the noncitizen provides good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* (alternation and internal quotation marks omitted). "At bottom, however, '[b]oth regulations were intended to 'provide due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release.'" *Id.* And this Court has previously rejected the Government's interpretation of § 241.4(l)(2). *Guerra v. Bondi*, No. CIV-25-1240-G, 2026 WL 114258, at *5 (W.D. Okla. Jan. 15, 2026) ("Respondent contends that the requirements of notice and an informal interview in § 241.4(*l*)(1), and of a review process and interview in § 241.4(*l*)(3), are not applicable to noncitizens whose release is revoked pursuant to § 241.4(*l*)(2).

---

OOS was made by the Executive Associate Commissioner or by a district director.

Respondent has not cited authority for this position, and 'courts have consistently held otherwise.'" (quoting *Zhu v. Genalo,* 798 F. Supp. 3d 400, 410 (S.D.N.Y. 2025) (collecting cases))).

Respondents do not allege that Petitioner violated any conditions of release, so it appears that Respondents rely on the "changed circumstances" prong as the justification for revocation. *Id.* at *4.

"Individuals released on parole or other forms of conditional release have a liberty interest in their 'continued liberty.'" *Iza v. Arnott*, 2026 WL 67152, at *3 (W.D. Mo. Jan. 8, 2026) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). "The Fifth Amendment's Due Process Clause forbids the Government to deprive any person of liberty without due process of law. Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690 (internal quotation marks and alterations omitted). Individuals who have been conditionally released from detention have a protected interest in their "continued liberty." *Young v. Harper*, 520 U.S. 143, 147 (1997). "This is true even when the released individual is subject to extensive conditions of release." *Villanueva v. Tate*, 801 F. Supp. 3d 689, 704 (S.D. Tex. 2025). And the Due Process Clause is also implicated where "an individual has reasonably relied on agency regulations promulgated for his guidance or benefit and has suffered substantially because of their violation by the agency." *United States*

11

*v. Caceres*, 440 U.S. 741, 752–53 (1979).

The Government had the opportunity to apprise the Court of all facts relating to the revocation of Petitioner's OOS when Respondents responded to the petition, but provide the Court with no reasons for the revocation. Respondents do not suggest there are changed circumstances present that necessitated revoking Petitioner's OOS. As a result, Respondents failed to comply with ICE's revocation procedures when they re-detained Petitioner after his release on an OOS. *See Pham,* 2025 WL 3243870, at *1 ("ICE[] failed to comply with § 241.13(i)(2) in establishing a change of circumstances that demonstrated a significant likelihood of removal in the reasonably foreseeable future at the time of Petitioner's re-detention. District courts in the Tenth Circuit facing this same issue have found that a failure to establish changed circumstances amounts to a due process violation that justifies release.") (collecting cases).

There is also no indication in the record that Petitioner received formal written notification of the reasons for his renewed detention when he was detained in December 2025, or at any time thereafter. Under § 241.13(i)(3), "*[u]pon revocation,* the [noncitizen] will be notified of the reasons for revocation of his or her release," after which the noncitizen will be afforded "an initial informal interview promptly after his or her return to [ICE] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated

12

in the notification." *Id* (emphasis added).[9]

Respondents argue Petitioner has no right to an interview under § 241.13, and if there was error, it was harmless.[10] They claim any "error is cured by Petitioner's opportunity to contest his detention before this Court." Doc. 9, at 7. Respondents rely on *Bahadorani,* 2025 WL 3048932, at *2, for support. *Id.* at 8. However, the Government's "reliance on *Bahadorani* is misplaced because it overlooks the fundamentally different circumstances presented" in Petitioner's immigration proceedings. *Li v. Bondi,* No. CIV-25-1408-J, 2026 WL 475133, at *3 (W.D. Okla. Feb. 19, 2026). "In *Bahadorani,* Judge Wyrick noted that while the individual may not have received the initial notice, he was

---

[9]    This requirement of written notice tracks the requirements of another ICE regulation, § 241.4(d), which provides:

> A copy of any decision by the district director, Director of the Detention and Removal Field Office, or Executive Associate Commissioner to release or to detain an alien shall be provided to the detained alien.

8 C.F.R. § 241.4(d).

[10]    "The harmless error standard applies in deportation and administrative cases." *See Bahadorani v. Bondi,* No. CIV-25-1091-PRW, 2025 WL 3048932, at *2 (W.D. Okla. Oct. 31, 2025) (first citing *Nazaraghaie v. I.N.S.,* 102 F.3d 460, 465 (10th Cir. 1996) and then citing *WildEarth Guardians v. United States Bureau of Land Mgmt.,* 870 F.3d 1222, 1238-39 (10th Cir. 2017)). "But prejudice may be presumed when 'compliance with the regulation is mandated by the Constitution' and 'where an entire procedural framework, designed to insure the fair processing of an action affecting an individual is created but then not followed by an agency.'" *K.E.O. v. Woosley,* 2025 WL 2553394, at *5 (W.D. Ky. Sept. 4, 2025).

interviewed on the same day as his detention, informed of 'the reasons for his detention,' and was subsequently afforded a second post-detention interview where he was permitted to 'submit information concerning his custody.'" *Id.* Here, Petitioner has been detained for four-plus months without being presented with the reasons for the revocation of his OOS, and "[t]hat complete breakdown in process is not comparable to the technically deficiency addressed in *Bahadorani* and squarely raises the constitutional concerns that justify habeas relief in this case." *Id.*[11]

"The essence of due process is notice and an opportunity to respond." *Roble v. Bondi*, 803 F. Supp. 3d 766, 772 (D. Minn. 2025). But Petitioner "cannot be expected to 'respond to the reasons for revocation stated in the notification' if the notification does not actually *state* any reasons for revocation." *Id.*

In sum, Respondents fail to show that ICE made the proper determination when it revoked Petitioner's OOS and that it provided Petitioner with notice detailing the reason(s) for the revocation of his OOS. *Santamaria Orellana v. Baker*, 2025 WL 2444087, at *8 (D. Md. Aug. 25, 2025)

---

[11]   "Judge Wyrick in *Bahadorani* acknowledge[d] there are circumstances where a violation of 241.13(i)(2) and (i)(3) can warrant habeas relief where the violation rises to the level of 'a serious substantive defect . . . beyond a mere failure to follow the regulation to a T.'" *Li,* 2026 WL 475133, at *3 n.2 (quoting *Bahadorani,* 2025 WL 3048932, at *3).

("[T]he record is clear that ICE's revocation of release violated its own regulations by failing to have an authorized official make the revocation decision, failing to provide [the petitioner] with notification of the reasons for his re-detention, failing to provide [the petitioner] with an informal interview, or some combination of these deficiencies.").

Petitioner is entitled to the "procedures authorized by Congress." *Sierra v. INS*, 258 F.3d 1213, 1218 (10th Cir. 2001); *see also Landon v. Plasencia*, 459 U.S. 21, 34–35 (1982) ("The role of the judiciary is limited to determining whether the procedures meet the essential standard of fairness under the Due Process Clause and does not extend to imposing procedures that merely displace congressional choices of policy."). And "[once] ICE unlocked the doors and placed [Petitioner] on supervised release, he acquired a conditional liberty interest that triggered constitutional protection before it could be taken away." *Rodriguez v. ICE,* 2026 WL 746563, at *4 (M.D. Fla. Mar. 17, 2026).

Thus, the Court concludes that after being released under § 1231, Petitioner gained a conditional liberty interest protected by the constitutional safeguards codified in § 241.4(*l*) and § 241.13(i). *See Kumar,* 2026 WL 1101979, at *2.

Petitioner maintains that Respondents did not follow those procedures, and that Respondents failed to present evidence that they followed those procedures. Doc. 1, at 2, 4-6; *see United States v. Gonzalez-Fierro*, 949 F.3d 512,

15

520 (10th Cir. 2020) ("[T]he Supreme Court has ruled that when Congress enacts a procedure, aliens are entitled to it." (quoting *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1084–85 (9th Cir. 2011))); *see also United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950) ("Whatever the procedure authorized by Congress is, it is due process as far as an alien is concerned.").

C. **Considering the *Mathews* factors, the failure to follow the regulations under § 241.4(l) and § 241.13(i) violated Petitioner's procedural due process rights.**

Having established that Petitioner has a protected liberty interest in his conditional release on supervision, the Court will consider what process Petitioner was entitled to when ICE revoked his OOS. In determining what process is due, the Court considers (1) "the private interest that will be affected by the official action," (2) "the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

First, Petitioner's interest in being free from detention is strong. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (finding that freedom from detention is "the most elemental of liberty interests"). "Freedom from imprisonment—from government dont custody, detention, or other forms of physical

16

restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The Due Process Clause's protections extend to all persons in the United States, including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693. Petitioner's interest in receiving the procedural protections authorized by Congress is also at stake. *See Sierra,* 258 F.3d at 1218.

Petitioner was released under an OOS. He has lived in the United States under supervised release for twenty years, and during those years, his interest in release grew even stronger as he presumably "form[ed] the other enduring attachments of normal life." *Morrissey,* 408 U.S. at 482. Even balanced against the "broad power over naturalization and immigration" possessed by Congress that justifies "rules that would be unacceptable if applied to citizens," *Demore v. Kim,* 538 U.S. 510, 521 (2003), Petitioner's interest in his release tips the scale in his favor. Thus, the Court finds that the first *Mathews* factor heavily favors Petitioner.

Second, the risk of erroneous deprivation by failing to follow the procedure under § 241.13(i) is high. Petitioner was previously detained pursuant to § 1231(a)(6)[12] to effectuate his removal from the country and

---

[12]    Section 1231(a)(6) provides that a noncitizen "ordered removed who is inadmissible under section 1182 . . ., removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) . . . or who has been determined by the [Secretary of Homeland Security] to be a risk to the community or unlikely to comply with

17

eventually released under § 241.13(i). Petitioner was taken into custody without any process under § 241.13(i). Petitioner has spent four months in detention with little or no effort taken to effectuate his removal from the country. A travel document has been requested and Petitioner does not have a passport, raising another impediment. *See* Doc. 9, at 3 (citing Ex. 1, at 4). Had Respondents followed the procedure set forth under ICE's regulations, Respondents would have considered whether Petitioner's removal was significantly likely in the reasonably foreseeable future.

Deportation Officer Neville's declaration states that he expects Petitioner's removal to occur at some indeterminate time in the future "[b]ecause the Afghan government is accepting increasing number of its citizens and the number of successful removals to third countries." *See* Doc. 9, at 2 (citing Ex. 1, at 5). However, post-hoc rationalizations by the Government do not suffice for showing the Court that it made the required finding of changed circumstances making Petitioner's removal more likely *before* his OOS was revoked. *See Arostegui-Campo v. Noem,* 2025 WL 3280886, at *4 (S.D. Cal. Nov. 25, 2025) ("While it is possible that Petitioner may be removed to

---

the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." Petitioner was charged as removable for convictions of "two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct" 8 U.S.C. § 1227(a)(2)(ii), and "an aggravated felony," § 1227(a)(2)(iii). Doc. 9, Ex. 2, at 3.

Mexico in the future, this post-hoc rationalization cannot form the basis of changed circumstances for the purpose of re-detention.") (internal quotation marks omitted). Given that little to no action was taken to effectuate Petitioner's removal before he was re-detained, it appears there was a significant erroneous deprivation of his rights. So, the second *Mathews* factor also weighs in his favor.

Third, the Government's interest in not providing process under its own regulations is slight to nonexistent. "While this Court recognizes that the government has an interest in enforcing immigration laws, the government's interest in re-detaining [P]etitioner without adequate notice and an opportunity to challenge the revocation of his release is low." *Saqib*, 2026 WL 350830, at *6.

To be sure, when considering the Government's interest, "it must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982). The Government has an interest in enforcing its immigration policies and preventing noncitizens from remaining "in the United States in violation of our law." *Demore*, 538 U.S. at 518. The Court recognizes that "[o]ver no conceivable subject is the legislative power of Congress more complete." *Reno v. Flores*, 507 U.S. 292, 305 (1993)

(internal quotation marks omitted). Thus, the Government's interest in enforcing its immigration policies is considerable.

But the regulations at issue provide the process for taking a person into custody after they have been released under §§ 241.4(l) and § 241.13(i). The Court finds that Respondents have little to no interest in not following the procedure set forth in their own regulations. While the Respondents surely have a strong interest in removing a person who is subject to a final order of removal, they have little to no interest in keeping a person in custody where they do not take action to remove them.

Finally, Respondents have not argued there are any fiscal or administrative burdens in following their own regulations.

Balancing the *Mathews* factors, the Court concludes that the process due to Petitioner was the process set forth in the applicable regulations for revoking his release. And Respondents' failure to provide that process violated his due process rights. Moreover, considering the *Mathews* factors, the Court concludes that release is the appropriate remedy.

The Court's conclusion is consistent with the conclusions of other district courts, which have "found that such regulatory defects amount to due process violations that entitle a petitioner to habeas relief." *Hamidi v. Bondi*, No. CIV-25-1205-G, 2025 WL 3452454, at *3-4 (W.D. Okla. Dec. 1, 2025) (internal quotation marks omitted); *see also Pham*, 2025 WL 3243870, at *1; *Guerra*,

20

2026 WL 114258, at *7; *Ahmed,* 2026 WL 836123, at *5-6 (collecting cases granting immediate release where ICE detainees were denied notice under § 241.13); *cf. Skutar v. Mullin,* CIV-26-0036-HE, Doc. 15, at 2-3 (W.D. Okla. Apr. 24, 2026) (Order adopting Report and Recommendation) (ordering Petitioner's immediate release and stating "[w]hile the Attorney General has authority to revoke bond 'at any time' under 8 U.S.C. § 1226(b), 'if an immigration judge has determined the noncitizen should be released, the DHS may not re-arrest that noncitizen absent a change of circumstance[s].'") (quoting *Salcedo Aceros v. Kaiser,* 2025 WL 2637503, at *1 (N.D. Cal. Sept. 12, 2025)).[13]

## V.    Recommendation and notice of right to object.

For the reasons set forth above, the undersigned recommends the Court grant Petitioner's request for habeas relief, and order his immediate release from custody subject to the terms of his unlawfully revoked OOS. The undersigned further recommends that the Court order Respondents submit a declaration pursuant to 28 U.S.C. § 1746 affirming that Petitioner has been released from custody within five business days of the Court's order.[14]

---

[13]    The undersigned does not address Petitioner's remaining argument about the alleged post-removal-order unlawful detention, *see* Doc. 1, at 14, because this Report and Recommendation, if adopted, will moot these requests.

[14]    To the extent that Petitioner may be entitled to EAJA fees and costs as a prevailing party, Petitioner must seek those separately after a final judgment. 28 U.S.C. § 2412(d)(1)(B); *see also Daley v. Ceja,* 158 F.4th 1152, 1166 (10th Cir. 2025) (interpreting "EAJA's broad language to unambiguously

The undersigned advises the parties of their rights to file an objection to this Report and Recommendation with the Clerk of this Court on or before May 11, 2026, in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2).[15] The undersigned further advises the parties that failure to make a timely objection to this report and recommendation waives the right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This report and recommendation disposes of all issues and terminates the referral to the undersigned Magistrate Judge in this matter.

ENTERED this 7th day of May, 2026.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE

---

authorize fees in habeas actions challenging immigration detention").

[15]    Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation to three days. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) ("The Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process.").